IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK06-81303-TJM |
| ) | ADV12-8038-TJM |
| JENEANE L. GRIMES, ) | |
| ) | CH. 13 |
| Debtor(s). ) | |
| JENEANE L. GRIMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ECMC, ) | |
| ) | |
| Intervenor-Defendant.) | |

## ORDER

Trial was held on the dischargeability of a student loan on March 12, 2013. Jeneane L. Grimes, the plaintiff, appeared pro se. ECMC, as intervenor-defendant, was represented by Joel Bacon.

## FINDINGS OF FACT

When this adversary proceeding was filed in May of 2012, the debtor was 65 years old and employed as a records clerk with Metropolitan Community College in Omaha, Nebraska. Her hourly wage was $13.75. On the date of the trial, March 12, 2013, the debtor was 66 years old. She had lost her job in September of 2012 and was receiving unemployment benefits which would continue through September of 2013.

Because of the evidence heard at the trial concerning her employment status and her health, a ruling was deferred and both parties were requested to file a status report approximately six months after the trial date.

The debtor filed her status report on September 6, 2013 (Fil. No. 45), and ECMC filed a status report on September 23, 2013 (Fil. No. 46).

According to the status report filed by the debtor, her unemployment insurance would terminate on September 28, 2013. She receives a net Social Security payment of $830.00 per month and receives $58.00 per month from TIAA-CREFF Retirement from Metropolitan Community College.

As of the date of the status report, she remained unemployed but continued to look for work.

The student loan at issue was $39,401.00 plus accruing interest as of the date of trial. It represented a consolidation of prior student loans. The original amount of the consolidated loan was disbursed in December of 1999. She had made some payments on the original student loans, but has been unable to make any payments on the consolidated balance which continues to grow at $7.97 per day at the 7.75% interest rate.

The student loan enabled the debtor to obtain an associate of arts degree from Metropolitan Community College. She worked for the college for approximately ten years prior to being terminated.

The debtor had heart bypass surgery in December of 2012. A letter from her surgeon, Fil. #38, states that the bypass surgery was related to "multi-vessel coronary disease, diabetes mellitus and obesity." The surgeon expected her to be able to return to full activity by April or May of 2013. At trial, she testified she was still in physical therapy three days a week.

Prior to filing bankruptcy, she looked into two different payment plans sponsored by the federal government. One was called an Income Sensitive Plan and another a Graduated Payments Plan. She believed both required monthly payments in excess of what she could afford, even when she was employed. With her monthly Social Security and retirement payment, she now has gross income of $10,656.00. The 2013 poverty guidelines of the Health and Human Services Department shows that a family of one earning less than $11,490.00 is considered in poverty.

ECMC has argued in its brief and affidavit evidence that the debtor has additional income in the amount of $1,700.00 per year that she had withdrawn from her retirement plan. However, the testimony of the debtor is that that was a one-time withdrawal and that the balance of her retirement plan pays out at the rate of $58.00 per month.

Exhibit 28 shows her monthly expenses of $1,466.00, or $17,592.00 per year. Now that she is both unemployed and no longer eligible for unemployment benefits, she will have to reduce her already minimal expenses in order to live.

Interest on the student loan is accruing at $7.97 per day or $2,909.05 per year, far in excess of her available funds.

ECMC presented evidence that the debtor could enroll in a payment plan called an Income Based Repayment (IBR) Plan which is described in 34 C.F.R. § 682.215. The IBR payments are calculated using the borrower's adjusted gross income and family size relative to the Federal Poverty Guidelines. The required annual loan payment under the IBR is capped at 15% of earnings above 150% of the applicable poverty level. Borrowers who earn less than 150% of the poverty level for their family size will have a zero dollar ($0) IBR payment, and borrowers who earn more will pay 15% of any amount that exceeds 150% of the federal poverty level for their family size. Because the monthly IBR payment is calculated to the percentage of the borrower's income, if the borrower's income drops, the monthly payment is reduced accordingly. Aff. of Julie K. Swedback (Fil. No. 28).

According to Fil. #28, based on the plaintiff's reported 2012 Adjusted Gross Income of $28,093.00, under the IBR her monthly payment on her student loan would be $135.73. The affidavit further states that, during the time she was receiving unemployment benefits, her income was so small that her current payment under the IBR would be zero dollars.

In the recent status report filed by ECMC, an affidavit of Lisa Thigpen was included (Fil. #46-1). That affidavit explains that the balance on the note as of September 19, 2013, is $40,913.28 consisting of principle and unpaid interest. Annual interest is fixed at 7.75% and is accruing at a daily rate of approximately $7.97. The affiant explains that since much of the debtor's current

income is Social Security and her total annual income with Social Security and retirement income would equal less than $25,000.00, the repayment program excludes her Social Security from her Adjusted Gross Income. Once again, her IBR payment would be zero dollars.

The debtor's obligation under the IBR would be to pay the monthly amount as determined by the use of the formula regarding adjusted gross income, now zero, for 20 years and then the loan would be administratively discharged. In the meantime, interest continues to accrue. The annual interest amount, $2,909.05, would accumulate to $58,181.00 in 20 years, bringing the total amount of the debt at the end of 20 years, when the debtor will be 86 years old, to $99,094.28.

Based upon her current income situation, which has continued for more than one year, but supplemented by unemployment benefits, her age, her level of education, her work experience, and her health condition, having had heart bypass surgery less than one year ago, suffering from diabetes and obesity, I find that the debtor has no ability to pay the student loan either at the current balance or at the annual principal plus accrued interest basis.

## CONCLUSIONS OF LAW

In the Eighth Circuit, in evaluating whether a debtor's student loan would impose an "undue hardship," the court should apply the totality-of-the-circumstances test. Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 553 (8th Cir. 2003), cited in Educ. Credit Mgmt. Corp. v. Jespersen, 571 F.3d 775, 783 (8th Cir. 2009) (Smith, Circuit Judge, concurring). The court should consider (1) the debtor's past, present and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Id.

A "debtor's good faith effort to lower [his or] her monthly payment by qualifying for an income contingent repayment plan is a factor in the undue hardship analysis." Jespersen, 571 F.3d at 784 (citing Cumberworth v. U.S. Dep't. of Educ. (In re Cumberworth), 347 B.R. 652, 661 (B.A.P. 8th Cir. 2006)).

Both Judge Smith and Judge Bye, concurring in Jespersen, make it clear that, considering the totality of the circumstances, participation in an income contingent repayment plan such as is now available to the debtor is simply one factor to consider when undertaking the undue hardship inquiry.

On this record, I conclude that Ms. Grimes cannot presently make student loan payments without compromising her minimal standard of living and, based upon her age, work experience and health, I conclude it is unlikely that she could make any payments in the future. Therefore, her request for a hardship discharge under § 523(a)(8) is granted.

IT IS ORDERED that plaintiff is granted a hardship discharge regarding the student loan obligation under § 523(a)(8). Separate judgment will be entered.

DATED:      October 10, 2013

BY THE COURT:

/s/ Timothy J. Mahoney

United States Bankruptcy Judge

Notice given by the Court to:
　*Jeneane L. Grimes
　Joel Bacon
　Kathleen Laughlin
　U.S. Trustee